UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
NORMA DEL FRANCO,

                  Plaintiff,                        **MEMORANDUM AND
ORDER**
CV-02-3064 (JMA)

    -against-

NEW YORK CITY OFF-TRACK BETTING
CORPORATION,

                  Defendant.
-----------------------------------------------------------X

APPEARANCES:

    Mario DeMarco, Esq.
    8 South Main Street
    Port Chester, New York 10573
    *Attorney for Plaintiff*

    Michael A. Cardozo
    Corporation Counsel of the City of New York
    100 Church Street
    New York, New York 10007
        *By:*    *Isaac Klepfish*
                *Assistant Corporation Counsel*
                *Attorney for Defendant*

**AZRACK, United States Magistrate Judge:**

    Plaintiff Norma Del Franco ("Del Franco") brings this action against her former

employer, defendant New York City Off-Track Betting Corporation ("OTB"), alleging that OTB

discriminated against her on the basis of age in violation of the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.  Plaintiff further claims that

defendant created a hostile work environment.

    By motion dated December 28, 2005, defendant moves for summary judgment pursuant

to Rule 56 of the Federal Rules of Civil Procedure. The parties consented to have a United States Magistrate Judge preside over this case for all purposes, including entry of judgment, pursuant to 28 U.S.C. § 636(c). Viewing the evidence in the light most favorable to plaintiff, I find that there are no material facts in dispute such that a reasonable jury could conclude that plaintiff was discriminated against on the basis of her age. I further find that plaintiff failed to establish, as a matter of law, the existence of a hostile work environment. Accordingly, defendant's motion for summary judgment is granted and plaintiff's claims are dismissed.

## I. FACTS

The following facts are taken from the parties' Local Civil Rule 56.1 statements, the deposition testimony of Norma Del Franco, Ronald Chin, and Richard Gatto, and the declaration of Patrick Dunphy, and are undisputed unless otherwise noted.

Defendant OTB is a public benefit corporation established by the laws of New York for the purpose of raising revenue through off-track wagering on horse races. OTB branches are supervised by Branch Managers, who report to District Directors. OTB employs full-time, part-time, and per diem employees. Per diem employees are not permanently assigned to a specific OTB branch but rather, they fill in for full-time and part-time employees at different branches on an as-needed basis. Per diem employees obtain work assignments by calling the Branch Field Operations ("BFO") office. When possible, OTB attempts to accommodate per diem employees by allowing them to call the BFO office in their district for assignments at locations within close proximity to their homes.

Plaintiff Del Franco was hired by OTB as a per diem betting clerk on March 16, 1999, at which time she was 63 years old. Del Franco resided in Elmhurst, New York and at her request,

OTB directed plaintiff to call the BFO office in Queens to obtain work assignments. Plaintiff was assigned to the BFO office in Queens until March 2000.

On March 19, 2000, Ronald Chin, Manager of OTB Branch #106 in Queens, filed a Memorandum[1] in which he recounted an incident where plaintiff addressed him using vulgar language.[2] (See Declaration of Isaac Klepfish, dated Dec. 28, 2005, submitted in Support of Def.'s Mot. for Summ. J. ("Klepfish Decl."), Ex. D; see also Deposition of Ronald Chin ("Chin Dep.") 12:18-13:14, Klepfish Decl., Ex. O.) Shortly following this incident, Del Franco was reassigned to work at OTB locations in District I, which covers Manhattan. (See Declaration of Patrick Dunphy, Acting Vice-President of OTB Operations, dated Dec. 28, 2005 ("Dunphy Decl.") ¶ 9, Klepfish Decl., Ex. N.) Defendant maintains that Del Franco was transferred to Manhattan because of complaints it received from several Branch Managers in Queens. (Id.) Plaintiff, however, contends that OTB informed her that she was being transferred because OTB did not have any work available in Queens. (See Deposition of Norma Del Franco ("Del Franco Dep.") 91:14-20; see also Pl.'s 56.1 Statement, Ex. C.)

On December 11, 2000, Michelle Daniels, Supervising Manager of OTB Branch #136 in Manhattan, wrote a letter to Durita Goodwin ("Goodwin"), Director of District I, which stated that Del Franco:

---

[1] OTB's general Memorandum form states that it is "not a reprimand and cannot be used against [the employee] in consideration of punishment to be imposed in the event [the employee is] found guilty of misconduct or incompetency in any subsequent disciplinary proceeding" but it is "to be considered as notice to [the employee] that [his or her] conduct or competency requires improvement or adjustment." (See Klepfish Decl., Ex. D.)

[2] Specifically, Chin's Memorandum states that Del Franco called him a "F**K." (Id.)

had taken it upon herself to assign and open a window. She did not consult the Mgr, nor did she have authority to open and assign herself to a window. I informed her of the fact that this action is <u>not</u> permitted. Ms. Del Franco then picked up her coat and left the branch, leaving window #13 opened [sic] . . . . Ms. Del Franco has worked at the branch before and seems to have difficulty following instructions. (emphasis in original).

(<u>See</u> Klepfish Decl., Ex. E.)

In February 2001, Del Franco was issued a formal Reprimand[3] by Ervin Toms ("Toms"), Supervising Manager of OTB Branch #23 in Manhattan, where Del Franco was scheduled to work for several days. (<u>See</u> Klepfish Decl., Ex. F.) In the reprimand, Toms stated that fifteen minutes before the start of her scheduled shift on February 9, 2001, Del Franco telephoned to inform him that she was unable able to work because she was having car trouble. (<u>Id.</u>)

The following morning, on February 10, 2001, Goodwin received a telephone call from Del Franco requesting a work assignment for that day. (<u>See</u> Klepfish Decl., Ex. G.) After she turned down an assignment in the Bronx, Del Franco was assigned to work at Branch #14 in Queens from 12:00 p.m. to 6:30 p.m. (<u>Id.</u>) Later that evening, however, Goodwin was notified that, unbeknownst to her, Del Franco was already scheduled to work from 6:30 p.m. to 11:30 p.m at Branch #23 in Manhattan, but she failed to report for work at that location. (<u>Id.</u>) On February 11, 2001, Goodwin wrote a letter to Patrick Dunphy, who was then Executive Director of Branch Operations/Manpower, requesting that OTB remove Del Franco from District I. (<u>See</u> Klepfish Decl., Ex. G.) Goodwin stated that "[i]t appears [Del Franco] was given an assignment,

---

[3] OTB's general Reprimand form states, "[t]his reprimand can be used against [the employee] in consideration of punishment to be imposed in the event [the employee is] found guilty of misconduct or incompetency in any subsequent disciplinary proceeding." (<u>See</u> Klepfish Decl., Ex. F.)

chose to ignore it, called in and got another assignment more to her liking." (Id.) After these

three incidents, plaintiff was transferred back to Queens. (See Dunphy Decl. ¶ 10.)

Plaintiff does not dispute that she failed to show up for work at Branch #23 in Manhattan.

(See Del Franco Dep. 125:6-10.) Rather, plaintiff claims that after her conversation with Toms

on the evening of February 9, 2001, she notified the BFO office that she could not work the

"midnight shift" that week because her car was not running. (Id. 125:14-126:2) Plaintiff,

however, does concede that she called the BFO office on the following day to request a new

work assignment, which coincidentally, was closer to her home in Elmhurst. (Id. 126:5-15.)

After she was transferred back to Queens in March 2001, plaintiff was assigned to OTB

Branch #112. On June 8, 2001, Richard Gatto ("Gatto"), Manager of Branch #112, filed a

Notice of Complaint[4] against Del Franco because she refused to serve a customer. (See Klepfish

Decl., Ex. H; see also Deposition of Richard Gatto ("Gatto Dep.") 31:8-21; 35:4-25; 36:7-21;

38:4-39:3, Klepfish Decl., Ex. P.) The complaint stated that "[a]fter 5 minutes of heated

conversation between . . . us[,] she relented & served customer. She refused to quiet down when

asked by Mgr. until 10 minutes after incident." (See Klepfish Decl., Ex. H.) That same day,

Gatto also wrote a letter to his supervisors indicating that:

> On several occasions myself and Agent Del Franco had altercations
> usually over work ethics, serving customers, and attitude. On [sic]
> any given situation[,] many of these deficiencies would warrant a
> notice of complaint, however, fairness and conscience dictated and
> no complaints were ever issued. However[,] this last incident on
> Friday 6/8/01 was gross misconduct on her part . . . . Can not with all
> honesty work with anybody that has total disregard toward myself

---

[4] OTB's general Notice of Complaint form states, "[t]his form is to be utilized when an
incident occurs for which charges are to be drawn against an employee and/or an investigation is
to be conducted." (See Klepfish Decl., Ex. H.)

and minimal awareness of cashier's functions and service toward customers.

(See Klepfish Decl., Ex. I; see also Gatto Dep. 39:24-41:25.)

OTB terminated Del Franco's employment, effective June 14, 2001. (See "Letter of Termination," dated June 11, 2001, Klepfish Decl., Ex. J.) The letter stated that plaintiff was being discharged because of "misconduct which was prejudicial to the New York City Off-Track Betting Corporation." (Id.) On November 30, 2001, Del Franco filed a post-termination complaint with the Equal Employment Opportunity Commission ("EEOC"), stating that "NYC OTB discharged [her] because of [her] age." (See Klepfish Decl., Ex. M.) The EEOC dismissed the complaint on March 7, 2002 and informed Del Franco of her right to sue. (Id.) Plaintiff commenced the instant action on May 23, 2002.

Defendant contends that summary judgment is appropriate because there are no genuine issues of material fact in dispute. Specifically, defendant argues that it is entitled to summary judgment as a matter of law because plaintiff has failed to (1) establish a prima facie case of age discrimination and (2) exhaust her administrative remedies with respect to her hostile work environment claim.

## II. DISCUSSION

### A. Summary Judgment Standard

The standard for granting summary judgment is well established. Summary judgment should be granted only where there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). "[T]he burden is upon the moving party to demonstrate that

no genuine issue respecting any material fact exists," Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994), but "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

In determining whether any material facts are in dispute, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Am. Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (quoting Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir.1993)); see also Anderson, 477 U.S. at 255. To defeat a properly supported motion for summary judgment, the non-moving party must "'set forth specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R Civ. P. 56(e)). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586 (citations omitted). Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998); Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The non-moving party must come forth with "significant probative evidence" demonstrating that a factual dispute does in fact exist. Anderson, 477 U.S. at 249. "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (citations omitted).

**B. Age Discrimination Claim**

Plaintiff alleges that OTB terminated her employment on the basis of her age, in violation of the ADEA. (Compl. ¶ 10.) The ADEA prohibits an employer from discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a). Specifically, the ADEA protects individuals who are 40 years of age and older. Id. When evaluating a plaintiff's claim under the ADEA, courts apply the three-step analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973) and its progeny. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-510 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-54 (1981).

Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of age discrimination by showing that (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See 411 U.S. at 802; Stratton v. Dep't of the Aging, 132 F.3d 869, 879 (2d Cir. 1997). If the plaintiff successfully establishes a prima facie case, a presumption of discrimination arises and the burden then shifts to the defendant to offer a "legitimate, non-discriminatory reason for the employment decision." Stratton, 132 F.3d at 879; see also Burdine, 450 U.S. at 254. Finally, if the defendant articulates such a reason, the burden shifts back to the plaintiff to "show that the proffered reason is in reality a pretext for unlawful discrimination."

Stratton, 132 F.3d at 879.  While the burden shifts back and forth, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citation omitted).

### 1.  Plaintiff's Prima Facie Case

It is undisputed that plaintiff has satisfied the first and third elements of her prima facie case.  Del Franco was 65 years old when OTB terminated her employment.  She was therefore within the protected age group.  Furthermore, Del Franco's termination was clearly an adverse employment action.  There is some dispute, however, as to whether plaintiff has satisfied the second element of her prima facie case.  Defendant contends that Del Franco has not demonstrated that her job performance was satisfactory, whereas plaintiff argues that there is sufficient evidence to conclude that her performance was satisfactory.  The Court, however, need not make a determination on this issue because plaintiff's failure to establish a prima facie case is decided ultimately by her inability to satisfy the fourth element of her prima facie case - that she was terminated under circumstances giving rise to an inference of age discrimination.

Plaintiff contends that she has demonstrated that OTB discharged her under circumstances giving rise to an inference of age discrimination.  (See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. For Summ. J. ("Pl.'s Mem."), at 6-7.)   This element of plaintiff's prima facie case may be established by showing that "a younger employee replaced [her], by direct evidence, statistical evidence, or circumstantial evidence such as documentation of satisfactory performance."  Litman v. Firestone Rubber Co., 709 F. Supp. 461, 465 (S.D.N.Y. 1989) (citations omitted).  Del Franco maintains that her job performance was satisfactory and that "the

discovery process to date reflects that [she] was consistently a productive employee whose drawer receipts were often the most accurate of any other employee on shift." (Pl.'s Mem. at 6.) Plaintiff further claims that Branch Manager Gatto "had a history of making discriminatory and offensive remarks about both the [p]laintiff's age and the age of a co-worker who was in her eighties." (Id. at 7.)

The record does not support plaintiff's assertion that her job performance was satisfactory. In her deposition testimony, plaintiff conceded that, when assigned to work at an OTB branch in Manhattan for one week, she failed to show up because she had car trouble. (See Del Franco Dep. 125:3-126:4.) Del Franco also acknowledged that, on one occasion, she refused to serve a customer. (Id. at 142:6-142:16.) Other than plaintiff's own deposition testimony and random copies of her drawer receipts from April 2001 through June 2001, there is no probative evidence to support her claim of satisfactory job performance. Rather, defendant has adduced significant evidence to the contrary. During the period from March 2000 through June 2001, five different supervisors at multiple OTB branches filed separate complaints about plaintiff's poor attitude and work performance. (See Klepfish Decl., Exs. E-I.) In the absence of any probative evidence to counter these complaints, plaintiff's claim of satisfactory work performance is insufficient to raise an inference of age discrimination.

Plaintiff also contends that two comments made by Gatto in March 2001 establish that OTB discharged her under circumstances giving rise to an inference of age discrimination. According to plaintiff, Gatto told her "you don't need this job, you could live off of your Social Security." (Compl. ¶ 13; see also "Del Franco EEOC Complaint," Klepfish Decl., Ex. M.) Del Franco also alleges that Gatto made a comment about another OTB employee, Rafaella

Corbo, who was 81 years old at the time. Plaintiff claims that Gatto said he would "love to get rid of her but he can't because she came with the place." (Compl. ¶ 13; see also "Del Franco EEOC Complaint," Klepfish Decl., Ex. M.)

It is well settled that verbal comments may constitute evidence of discriminatory intent if the plaintiff can establish a nexus between the alleged discriminatory remarks and the defendant's decision to terminate the plaintiff's employment. See, e.g., Woroski v. Nashua Corp., 31 F.3d 105, 109-110 (2d Cir.1994) abrogated on other grounds by Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000); Pronin v. Raffi Custom Photo Lab, Inc., 383 F. Supp. 2d 628, 636 (S.D.N.Y. 2005); Emanuel v. Oliver, Wyman & Co., LLC, 85 F. Supp. 2d 321, 335 (S.D.N.Y. 2000). However, "statements made by nondecisionmakers, or statements made by decisionmakers unrelated to the decisional process itself" do not constitute sufficient evidence to support a claim of age discrimination. Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J. concurring); see also Opoku-Acheampong v. Depository Trust Co., No. 99 Civ. 0774, 2005 WL 1902847, at *3 (S.D.N.Y. Aug. 9, 2005) ("[S]tray comments are not evidence of discrimination if they are not temporally linked to an adverse employment action or if they are made by individuals without decision-making authority.") (citations omitted). Discriminatory statements are not deemed "stray remarks" when they are: "(1) made by the decision maker or one whose recommendation is sought by the decision maker; (2) related to the specific employment decision challenged; and (3) made close in time to the decision." Rizzo v. Amerada Hess Corp., No. 99-CV-0168, 2000 WL 1887533, at *5 (N.D.N.Y. Dec. 29, 2000) (citations omitted). Assuming that Gatto made the these two alleged discriminatory remarks, they are insufficient evidence from which discriminatory animus can be inferred.

First, Gatto was not an individual with decision-making authority. (See Dunphy Decl. ¶¶ 4, 14.) While Branch Managers are "asked for evaluations from time to time of employees working in a branch office and may be asked to document any violations of procedure," they "are not involved in the hiring or firing of per diem employees or in making personnel decisions." (Id. ¶ 4.) Plaintiff contends that "through employee 'evaluations' and other actions, Branch Managers are involved in personnel decisions." (Pl.'s 56.1 Statement ¶ 4.) Plaintiff further argues that Gatto's complaint and letter to his supervisors "obviously had the effect of getting the [p]laintiff fired, as she was terminated only days after [he] sent the memo." (Id. ¶ 31.) However, Gatto's Notice of Complaint, dated June 8, 2001, detailing an incident with Del Franco, only documented plaintiff's misconduct and violation of procedure; it made no suggestions regarding Del Franco's employment status. (See Klepfish Decl., Ex. H.) Additionally, Gatto's letter to his supervisors, written on that same day, merely recounted the incident and requested that Del Franco no longer be sent to work at his branch. (Id., Ex. I.) Neither the complaint, nor the letter, made any specific reference to terminating plaintiff's employment with OTB. Moreover, the record indicates that during the fourteen months immediately preceding Gatto's complaint, four other OTB supervisors separately reported plaintiff's poor behavior and job performance. It would be unreasonable to conclude that Gatto's complaint had any more influence on defendant's eventual decision to terminate Del Franco than the written complaints of the four other OTB supervisors.

Second, the two alleged remarks are also insufficient to raise an inference of discrimination because they were unrelated to OTB's decision to discharge Del Franco. Finally, the purported discriminatory statements, which were made in March 2001, were not temporally

related to plaintiff's eventual discharge in June 2001, slightly more than three months later. <u>See</u>, <u>e.g.</u>, <u>Argueta v. Long Island Jewish Health Sys.</u>, No. 01-CV-4031, 2003 WL 22670915, at *9 (E.D.N.Y. Nov. 6, 2003) (no nexus when the discriminatory statements were made five months before defendant's decision to terminate plaintiff); <u>Emanuel</u>, 85 F. Supp. 2d at 335 (no nexus when the stray comments were made months before defendant's decision to discharge plaintiff). Even when viewed in the light most favorable to plaintiff, these comments are isolated remarks and are therefore insufficient to establish that plaintiff's discharge occurred under circumstances giving rise to an inference of age discrimination.

Plaintiff's Complaint further alleges that Gatto treated her differently than other similarly situated employees

> by abusing her verbally, and imposing restriction[s] on her at the worksite. These restrictions were not imposed upon any of the employees under Mr. Gatto's supervision. These restrictions included, but are not limited to, directing the plaintiff to stay at her window and not allowing her to leave while he allowed all of the other employees to leave their windows to watch the horse races from his television at his desk with the exception of one other employee who was also a senior citizen, and not allowing the plaintiff to make or receive any telephone calls, a privilege that was extended to all of the other employees.

(Compl. ¶ 15.) While "th[e] fourth element of a <u>prima</u> <u>facie</u> case may be proven by showing that a similarly situated individual not in [plaintiff's] protected group . . . was treated differently," plaintiff's allegation is conclusory and unsupported, as the record is devoid of any evidence to support it. <u>Jobe v. Teachers' Ret. Sys. of New York City</u>, No. 95-CV-5302, 1999 WL 243626, at *5 (E.D.N.Y. Apr. 22, 1999) (quoting <u>Tramble v. Columbia Univ.</u>, No. 97 Civ. 1271, 1999 WL 61826, at *5 (S.D.N.Y. Feb. 10, 1999)); <u>see</u> <u>also</u> <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 150 (2d Cir. 2000) ("Circumstances from which invidious discrimination may be inferred

include preferential treatment given to employees outside the protected class.").  In the absence of such evidence, no reasonable jury could infer that this alleged difference in treatment was motivated by age discrimination.

While plaintiff's burden of proof at this stage is <u>de</u> <u>minimis</u>, <u>see</u> <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994), the totality of the evidence simply does not suggest that Del Franco's age was a motivating factor in defendant's decision to terminate her employment.  <u>See</u> <u>Constantinescu v. Dentsply Equip.</u>, No. 95-CV-5310, 1998 WL 146702, at *5 (E.D.N.Y. Mar. 24, 1998).  Plaintiff has therefore failed to establish a <u>prima</u> <u>facie</u> case of age discrimination.

Even assuming, <u>arguendo</u>, that plaintiff was able to make out a <u>prima</u> <u>facie</u> case, she would nevertheless be unable to demonstrate that she was discriminated against on the basis of her age, as defendant has articulated a legitimate, non-discriminatory reason for its decision to terminate her employment and plaintiff is unable to show that this proffered reason is merely a pretext for discrimination.

**2.  Defendant's Legitimate Reason for Plaintiff's Discharge**

As previously stated, if the plaintiff has established a <u>prima</u> <u>facie</u> case, a presumption of discrimination arises and the burden then shifts to the defendant to offer a "legitimate, non-discriminatory reason for the employment decision."  <u>Stratton</u>, 132 F.3d at 879.  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  <u>Reeves</u>, 530 U.S. at 142 (quoting <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 509).  This burden, like plaintiff's initial burden to establish a <u>prima</u> <u>facie</u> case, "is not a demanding one; [defendant] need only offer . . . an explanation for the employment decision."  <u>Bickerstaff v. Vassar College</u>, 196 F.3d

435, 446 (2d Cir. 1999) (citation omitted).

OTB contends that Del Franco was discharged for "misconduct and insubordination." (See "Letter of Termination," dated June 11, 2001, Klepfish Decl., Ex. J; see also Def.'s Mem. of Law in Support of Mot. for Summ. J. ("Def.'s Mem."), at 5.) Defendant has offered evidence in the form of depositions, affidavits, and employer records to support its proffered reason. This evidence shows that during the twenty-seven months that Del Franco worked at OTB, five separate complaints were filed against her by five different supervisors. That only one of these incidents resulted in an official reprimand is of no consequence. These written complaints constitute sufficient evidence from which a reasonable jury could conclude that plaintiff was discharged for misconduct and insubordination. Defendant has therefore rebutted the presumption of age discrimination and articulated a legitimate, non-discriminatory reason for its decision to discharge Del Franco. See Reeves, 530 U.S. at 142 (defendant successfully rebuts the presumption of discrimination by offering evidence from which a reasonable jury can conclude that plaintiff was terminated for the non-discriminatory reason). Thus, assuming that Del Franco had established a prima facie case of age discrimination, the remaining issue is whether plaintiff has demonstrated that defendant's articulated reason for terminating her employment is merely a pretext.

### 3. Pretext

Under the final step of the McDonnell Douglas framework, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that defendant's proffered reason is a pretext and that age was indeed a motivating factor for terminating plaintiff's employment. See Stratton, 132 F.3d at 879. "[A] reason cannot be proved to be 'a pretext for discrimination'

unless it is shown both that the reason was false, and that discrimination was the real reason" for the employer's decision. St. Mary's Honor Ctr., 509 U.S. at 515. The Court must examine "the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel, 232 F.3d at 90 (citation omitted).

Plaintiff's argument that her work performance was satisfactory is insufficient to rebut defendant's proffered non-discriminatory reasons for her termination. "The mere fact that an employee disagrees with the employer's assessments of her work, however, cannot[,] standing on its own[,] show that her employer's asserted reason for termination was pretextual." Ricks v. Conde Nast Publs., Inc., 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000) (citation omitted). As previously stated, it is of no consequence that plaintiff consistently had accurate drawer receipts. See Ancekewicz v. Long Island Univ., No. 02-CV-4490, 2005 WL 1411917, at *8 (E.D.N.Y. June 15, 2005) ("that the employee had other good qualities or made other positive contributions to the workplace" is insufficient to establish pretext) (emphasis in original). Defendant has adduced ample evidence of complaints from various OTB branch managers and supervisors regarding plaintiff's poor behavior toward customers and supervisors. Plaintiff does not specifically dispute that the incidents recounted in these complaints occurred but rather, she maintains that she was not "insubordinate to any supervisor at OTB." (Pl.'s 56.1 Statement ¶ 14.) While plaintiff "may disagree with the assessments made in the complaints, and may have had other positive qualifications for her job," it does not prove that defendant's stated reason was pretextual. Ancekewicz, 2005 WL 1411917, at *8; see also Bluight v. Consol. Edison Co. of New York, No. 00 Civ. 3309, 2002 WL 188349, at *6 ("[M]inimal evidence raising a factual

issue about [her] performance cannot suffice to permit a reasonable juror to find that the poor evaluations were a pretext for discrimination.")  Moreover, "[i]t is not the province of this Court, . . . to second-guess the nondiscriminatory business decision of private employers." Argueta, 2003 WL 22670915, at *9 (E.D.N.Y. Nov. 6, 2003) (citing Cerwinski v. Ins. Servs. Office, No. 95 Civ. 1766, 1996 U.S. Dist. LEXIS 14509, at *13 (S.D.N.Y. Oct. 3, 1996)); see also Phipps v. Comprehensive Cmty. Dev. Corp., No. 00 Civ. 6063, 2005 WL 287413, at *18 (S.D.N.Y. Feb. 4, 2005).

The two alleged comments that Gatto made in March 2001 are also insufficient to satisfy plaintiff's burden to prove pretext.  As discussed above, there is neither a nexus between these purported remarks and OTB's decision to discharge Del Franco, nor were these alleged discriminatory statements made by an individual with decision-making authority.  See Argueta, 2003 WL 22670915, at *8 (citations omitted).

Plaintiff's claim that she was discharged because of her age is further weakened by evidence of OTB's continued employment of individuals within the protected age group.  See Ralkin v. New York City Transit Auth., 62 F. Supp. 2d 989, 1000 (E.D.N.Y. 1999).  Rafaella Corba, who has been employed by defendant since 1998 and worked under Gatto's supervision for three years, is currently 86 years old and remains a full-time OTB employee.  (See Dunphy Decl. ¶ 16.)

The only probative evidence of plaintiff's age discrimination claim is that she was 65 years old when OTB terminated her employment.  This evidence, however, is insufficient to rebut defendant's articulated, non-discriminatory reason for terminating plaintiff.  See Wyatt v. Zuckerman, No. 93 Civ. 8327, 2005 WL 525256, at *13 (S.D.N.Y. Mar. 7, 2005).  Furthermore,

the fact that Del Franco was hired when she was 63 years old, and discharged a relatively short time thereafter, undercuts her claim that she was discharged because of her age.  See, e.g., Pronin, 383 F. Supp. 2d at 639 (no age discrimination where "the hiring and firing decisions were made within two years of each other"); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000) (Where an individual is terminated shortly after having been hired, "there is a strong inference that discrimination was not a motivating factor in the employment decision."); Emanuel, 85 F. Supp. 2d at 334 ("[N]o reasonable juror could conclude that [defendant fired plaintiff] because he was a mere eleven months older than when he was hired.").

Plaintiff has failed to produce sufficient probative evidence that defendant's proffered reason for terminating her employment was false or that her age was the determinative factor. Drawing all reasonable inferences and resolving all ambiguities in favor of plaintiff, I find that, even if plaintiff satisfied her prima facie burden of age discrimination, there is insufficient evidence in the record from which a reasonable jury could conclude that OTB's decision to discharge Del Franco was merely a pretext.

For the foregoing reasons, I find that there are no material facts in dispute such that a reasonable jury could conclude that plaintiff was discriminated against on the basis of her age. See Viola v. Philips Med. Sys., 42 F.3d 712, 716 (2d Cir. 1994) ("A grant of summary judgment is proper only if the evidence of discriminatory intent is so slight that no rational jury could find in plaintiff's favor.") (citation omitted).  Defendant has presented ample and largely uncontroverted evidence that Del Franco was not terminated because of her age but rather, as a result of her misconduct.  Accordingly, defendant's motion for summary judgment as to plaintiff's age discrimination claim is granted.

**C. Hostile Work Environment Claim**

Plaintiff alleges that she was subjected to a hostile work environment on the basis of age in that she "was a victim of mental harassment by several of her supervisors" because "she was an older employee who did not 'fit in' with the rest of the employees." (Compl. ¶¶ 23, 31.) In her Complaint, plaintiff points to several instances of alleged abuse during the twenty-seven months that she was employed by OTB.

First, Del Franco identifies an incident on March 19, 2000, where a supervisor at OTB Branch #106 tried to distract her by "singing, tapping, rushing, and screaming" while she counted out her drawer. (Id. ¶ 24.) Second, plaintiff alleges that on December 14, 2000, a supervisor at OTB Branch #136 shouted profanities at her. (Id. ¶ 26.) Plaintiff also maintains that she was continuously mistreated from March 2001 through June 2001 by Branch Manager Gatto, who treated her differently than other employees because he refused to allow Del Franco "to leave her window . . . make or receive telephone calls . . .[or] watch the horse races at his desk." (Id. ¶¶ 28-29.) Fourth, plaintiff contends that on June 8, 2001, Gatto "screamed and yelled" at her. (Id. ¶ 30.) None of these allegations, however, appear in plaintiff's EEOC complaint, nor do they appear in plaintiff's Memorandum of Law.[5] Plaintiff's EEOC complaint recounts only statements Gatto allegedly made in March 2001 and states the following:

> After asking me how old I was, [Gatto said] that I did not need the job since I was collecting Social Security. When I referred to another betting clerk who was older than myself, he said he would love to get rid of her but he can't because she came with the place - I believe that NYC OTB discharged me because of my age.

---

[5] The relevant section of plaintiff's Memorandum of Law refers only to "offensive and discriminatory comments made by Richard Gatto" as the basis of her hostile work environment claim. (Pl.'s Mem. at 10.) Plaintiff fails to mention, or otherwise address, any of the incidents alleged in her Complaint.

(Klepfish Decl., Ex. M.)

Defendant argues that summary judgment is appropriate because plaintiff's hostile work environment claim fails on both procedural and substantive grounds, to wit, plaintiff has not exhausted her administrative remedies, nor has she established, as a matter of law, the existence of a hostile work environment.

A federal court may only consider those ADEA claims that were included in the original EEOC charge or those that are "reasonably related" to that charge. See 29 U.S.C. § 626(d); Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402 (2d Cir. 1993), abrogated by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d. Cir. 1998). "A claim raised for the first time in the district court is 'reasonably related' to allegations in an EEOC charge 'where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"[6] Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 83 (2d Cir. 2003) (citation omitted). Plaintiff's EEOC complaint alleges only that OTB discharged her on the basis of age. (See Klepfish Decl., Ex. M.) There is no mention or claim of a hostile work environment. The Court, however, need not address whether plaintiff's hostile work environment claim is "reasonably related" to the allegations set forth in her EEOC complaint, and thus exhausted, because her claim fails on substantive grounds.

---

[6] There are two other claims that are "reasonably related" allegations in an EEOC complaint. First, there is a claim that alleges "retaliation by an employer against an employee for filing an EEOC charge." Butts, 990 F.2d at 1402 (citations omitted). The second is a claim that alleges "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Id. at 1403 (citation omitted). However, neither of these "reasonably related" claims are applicable to the instant case.

To prevail on a hostile work environment claim, a plaintiff must establish "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004) (citations and internal quotation marks omitted); see also Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d. Cir. 1999). A plaintiff must also demonstrate that the misconduct complained of occurred as a result of plaintiff's membership in a protected class. See Brennan, 192 F.3d at 318.

The first element of a hostile work environment claim has both objective and subjective components. The misconduct complained of must be "'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). While isolated or occasional acts are generally insufficient to meet the threshold requirement of a hostile work environment, see Brennan, 192 F.3d at 318, "a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's work place." Alfano, 294 F.3d at 374; see also Hawkins v. City of New York, No. 99 Civ. 11704, 2005 WL 1861855, at *15 ("[A] single isolated instance of harassment is insufficient to establish a hostile work environment claim unless it was 'extraordinarily severe.'"). In determining whether the alleged misconduct is hostile, the court should examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

Harris, 510 U.S. at 23.  "The true question to be considered is thus whether plaintiff's

allegations, in context, show a workplace 'permeated with discriminatory intimidation, ridicule

and insult.'"  Chandler v. AMR Am. Eagle Airline, 251 F. Supp. 2d 1173, 1185 (E.D.N.Y. 2003)

(citing Harris, 510 U.S. at 21).

Arguably, the first two incidents of alleged abuse, where plaintiff claims that she was

screamed at and subjected to profanities, demonstrate that Del Franco was mistreated by

supervisors at two OTB branches.  However, there is nothing in the record to indicate that

plaintiff was mistreated because of her age, nor is there any indication that these incidents

adversely affected her job performance or that they were pervasive, thereby characterizing a

general atmosphere of abuse in the workplace.  These incidents are therefore insufficient to

sustain plaintiff's claim of a hostile work environment.  See Alfano, 294 F.3d at 376 (incidents

where plaintiff has failed to point to any "resulting disadvantage or adverse effect on her job

performance" must be removed from consideration); Brennan, 192 F.3d at 318 (no triable issue

of fact "because the three instances of hostility recounted by [plaintiff] had nothing to do with

age and were, in any event, insufficient as a matter of law to demonstrate a hostile work

environment); Pronin, 383 F. Supp. 2d at 634 ("While 'facially neutral incidents may be

included,' . . . plaintiff nevertheless must offer some evidence from which a reasonable jury

could infer that the facially-neutral incidents were in fact discriminatory.").

What remains are Del Franco's claims of mistreatment from March 2001 through June

2001, including allegations that Branch Manager Gatto treated her differently than other

employees, screamed at her on one occasion, and made two age-related remarks.  First,

Del Franco's claim of mistreatment is based on Gatto's refusal to allow her "to leave her

window . . . make or receive telephone calls . . .[or] watch the horse races at his desk," privileges that plaintiff claims were extended to other employees.  (Compl. ¶¶ 28-29.)  The record is devoid of any evidence to support this claim.  In opposing a motion for summary judgment, a party "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful."  <u>Podell v. Citicorp Diners Club, Inc</u>. 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted).  However, even if plaintiff had put forth competent evidence that she was in fact treated differently than other employees in the manner alleged, this conduct hardly rises to the level of "severe or pervasive" conduct required to establish a hostile work environment.  Second, these relatively minor incidents, which taken together occurred over the course of three months, clearly do not meet the threshold requirement of "discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment."  <u>Harris</u>, 510 U.S. at 21 (citations and internal quotation marks omitted); <u>see</u> <u>also</u> <u>Chandler</u>, 251 F. Supp. 2d at 1185 (E.D.N.Y. 2003) (three instances of derogatory and profane language were insufficient to support a hostile work environment claim); <u>Pagan v. New York State Div. of Parole</u>, No. 98 Civ. 5840, 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) (four instances of discriminatory remarks by a supervisor over the course of several months did not establish a hostile work environment).  Plaintiff has therefore failed to establish, as a matter of law, the existence of a hostile work environment.

For the foregoing reasons, I find that plaintiff failed to present competent evidence from which a reasonable jury could conclude that her allegations of mistreatment were sufficiently "severe or pervasive" to create an abusive work environment.  Accordingly, defendant's motion

for summary judgment as to plaintiff's hostile work environment claim is granted.

## III. CONCLUSION

Viewing the evidence in the light most favorable to plaintiff, I find that there are no material facts in dispute such that a reasonable jury could conclude that plaintiff was discriminated against on the basis of her age.  I further find that the alleged incidents of mistreatment are insufficient to establish the existence of a hostile work environment. Accordingly, defendant's motion for summary judgment is granted and plaintiff's claims are dismissed.


SO ORDERED.

Dated: April 28, 2006
Brooklyn, New York


_____/s/_____
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE